# STATE OF VERMONT

SUPERIOR COURT                                      ENVIRONMENTAL DIVISION
Vermont Unit                                             Docket No. 130-9-13 Vtec

| Hovey A250 Permit |
|---|

## ENTRY REGARDING MOTION

Title:          Motion to Amend (Motion 7)
Filer:          Natural Resources Board
Attorney:    Melanie Kehne
Filed Date:  April 14, 2015

Response filed on 04/17/2015 by Attorney Deborah T. Bucknam for Appellee Gregory Hovey
Response filed on 04/23/2015 by Attorney Hans Huessy for Appellant Toni Flanigan

**The motion is GRANTED.**

This matter relates to an after-the-fact Act 250 Land Use Permit (LUP) granted to Gregory Hovey (Mr. Hovey) to construct and operate a dog breeding facility in the Town of Victory, Vermont. The LUP, granted by a September 6, 2013 decision of the District #7 Environmental Commission (Commission), was appealed by neighboring property owners Robert and Toni Flanigan (the Flanigans). The Flanigans raised issues under Act 250 Criteria 1 and 8 related to air pollution and aesthetic impacts caused by the noise from Mr. Hovey's dog breeding facility.

By written decision dated March 31, 2015, this Court concluded that Mr. Hovey's facility did not result in undue air pollution or an undue adverse impact on the character of the surrounding area, and therefore, the Court approved the grant of the LUP. In re Hovey Act 250 Permit, No. 130-9-13 Vtec, slip op. at 7–8, 12 (Vt. Super. Ct. Envtl. Div. Mar. 31, 2015) (Walsh, J.). The Court conditioned the positive findings under Criteria 1 and 8 as follows (Condition 2): "Prolonged barking at the dog kennel shall be prohibited. Prolonged barking is considered to be sustained barking for one hour or more during the daytime or sustained barking for 30 minutes or more during the nighttime." Id. at 13.

The Natural Resources Board (NRB) now asks the Court to alter and amend our decision, pursuant to Vermont Rule of Civil Procedure 59(e), in three ways. First, the NRB asks the Court to clarify what constitutes daytime and nighttime for the purpose of avoiding confusion in enforcing Condition 2. Second, the NRB asks the Court to clarify what constitutes "sustained barking" for the same reasons. Finally, the NRB asks that we alter a sentence in the decision related to jurisdictional issues in this appeal. We address each issue in turn.

1

First, the NRB seeks clarification as to what constitutes daytime and nighttime. The NRB suggests, and all parties agree, that daytime be defined as 7:00 a.m. to 10:00 p.m. and nighttime from 10:00 p.m. to 7:00 a.m. As the parties are in agreement as to these definitions, we agree to amend Condition 2 to reflect this clarification.

The NRB also seeks clarification as to what constitutes "sustained barking." The NRB suggests that "differences of opinion between the parties on what permit conditions require could undermine the Court's goal of mitigating aesthetic impacts, and could result in spending limited resources on unnecessary disputes." (NRB's Mot. to Alter at 2, filed Apr. 14, 2015). To that end, the NRB suggests that we adopt a "90-second maximum break between sound events, to avoid any dispute over what would and would not constitute a violation of the sustained barking provision of Condition 2." Id. Mr. Hovey agrees to this definition, but the Flanigans urge the Court to adopt a longer interval of five minutes. While this disagreement supports the assertion that the definition of "sustained" barking may be open to interpretation, for the reasons that follow, the Court declines to adopt a set time interval as a definition for "sustained barking." We do, however, offer the following to assist the parties.

As we noted in our March 31 Decision, intermittent dog barking is not uncharacteristic of this area. Furthermore, the potential adverse impacts of Mr. Hovey's facility relate more to the frequency and duration of the noise than to the maximum level of noise created. Thus, Condition 2 was intended to prevent noise events that are both adverse to the character of the area and irritating and disruptive to the surrounding residents. Establishing a set interval of time between barks would not serve this purpose. A dog barking every 91 seconds or 5 minutes and 1 second is unlikely to be any less irritating than a dog barking every 89 seconds or 4 minutes and 59 seconds. Furthermore, in terms of frequency, a 5 minute interval could range from as few as 12 barks an hour to nearly constant barking interrupted by a few seconds of silence.

Precisely because the Court recognizes that certain intervals of barking may be irritating to one person in an environment without being out of character with a given area, we decline to create a hard and fast interval duration in defining what constitutes "sustained barking." Rather, the word must be given its ordinary meaning. Flexibility is required to determine if under the circumstances a reasonable person (not a person with bias or heightened sensitivities) would find that a given barking event over a given period of time constitutes "sustained" barking. The Court leaves it to the NRB's enforcement discretion and experience to determine whether a barking event violates Condition 2.

We also note that the NRB suggested we clarify that "bark" is meant to include any "vocalization" by Mr. Hovey's dogs, including "howling." The Court certainly contemplated that a dog "howling" would fall within the ambit of prohibited behavior contemplated in Condition 2. We therefore amend Condition 2 to supplement the term "barking" with "canine vocalization." Both terms are used synonymously in this Order.

The Flanigans, in their response to the NRB's Motion to Amend, also suggest that the Court impose "a more typical hard and fast noise limit that cannot be exceeded at all, consistent with prior Act 250 precedent." (Appellants' Response to the NRB's Mot. to Amend at

1, filed Apr. 23, 2015). Likewise, Mr. Hovey seeks clarification that the 70 dBA Lmax standard adopted by the Commission remains in force in the considering compliance with Condition 2.

For the reasons detailed in our March 31 Merits Decision, we decline to further alter our findings or Condition 2 and clarify that Mr. Hovey's dogs barking, even if below 70 dBA at the property line, will be a violation of Condition 2 if the barking is sustained. The evidence at trial indicated that the highest maximum sound measurement—Lmax—measured over the 10 day period was 64 dBA. These short instantaneous noises are not of a level that could potentially create undue air pollution. Furthermore, the potential aesthetic impacts recognized by the Court do not relate to the specific volume of the noise but rather, as mentioned above, the frequency and duration of the noise. We do not require the Flanigans to utilize noise measuring technology to determine whether the "canine vocalizations" that are disturbing them in fact exceed a decibel level. If the barking is heard at a neighboring property and is sustained for the minimum period it will constitute a violation of Condition 2. In addition to the NRB's discretion, Mr. Hovey must understand that the necessarily flexible standard established by the revised Condition 2 requires that he do his best to ensure his facility does not cause an undue impact on the neighborhood. Similarly, the Flanigans must recognize and accept that some level of dog barking is expected in Vermont neighborhoods and will continue to exist in this neighborhood after resolution of this dispute.

The final alteration to our March 31 Merits Decision that the NRB seeks relates to a sentence in the introductory paragraph related to jurisdictional issues within this matter. The Court stated the following:

> In April 2014, while this appeal was pending before the Court, Mr. Hovey filed an application to amend the LUP (the -1 Application). The Commission approved the -1 Application and issued an amended Land Use Permit. The Flanigans appealed that approval to this Court. All parties agree that because the original LUP was before the Court on appeal, the Commission was without jurisdiction to consider the -1 Application. As ordered below, we therefore VOID the Commission's approval of the -1 Application.

Hovey Act 250 Permit, No. 130-9-13 Vtec, slip op. at 1. In its motion to amend, the NRB states that it did not agree that the Commission lacked jurisdiction over the amendment. The NRB affirms that it did agree that the amendment appeal could be dismissed as moot. (NRB's Mot. to Amend at 3). The NRB states that it "acknowledged that there could be jurisdictional issues raised by the -1 Application, [but] it did not concede that the Commission lacked jurisdiction to consider the -1 Application." Id. None of the other parties weighed in on this issue. We accept the NRB correction that it does not concede that the Commission was without jurisdiction. We see no further need to amend our March 31 Merits Decision on this topic.

For the reasons described above, the Court **GRANTS** the NRB's motion to alter our March 31, 2015 Merits Decision. Specifically we alter Condition 2 to read as follows:

> 2.     Prolonged barking or other canine vocalization at the dog kennel shall be prohibited. Prolonged barking or other canine vocalization is considered to be sustained barking or

3

vocalization for one hour or more from 7:00 a.m. to 10:00 p.m. or sustained barking or vocalization for 30 minutes or more from 10:00 p.m. to 7:00 a.m.

Electronically signed on May 20, 2015 at 09:27 AM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division

Notifications:
Hans Huessy (ERN 1813), Attorney for Appellant Robert Flanigan
Hans Huessy (ERN 1813), Attorney for Appellant Toni Flanigan
Melanie Kehne (ERN 2561), Attorney for Interested Person Natural Resources Board
Deborah T. Bucknam (ERN 1391), Attorney for Appellee Gregory Hovey
Interested Person Darlene Pearson
Interested Person Doug Preston